**R. Tim PHIPPS, Plaintiff,**

v.

**Phillip PARKER, et al., Defendants.**

**Civ. A. No. 94–C–0133–P(R).**

United States District Court,
W.D. Kentucky,
Paducah Division.

March 3, 1995.

R. Tim Phipps, Eddyville, KY, pro se.

John T. Damron, Office of Gen. Counsel, Corrections Cabinet, Frankfort, KY, for defendants.

## MEMORANDUM OPINION

RUSSELL, District Judge.

This matter is before the court on cross motions for summary judgment. For the reasons below, the court denies the plaintiff's motion and grants the defendants' motion.

### FACTS

Plaintiff Phipps alleges that he is an orthodox Hasidic Jew. In early 1994 Phipps was forced to receive a "burr" haircut while in the segregation unit at Kentucky State Penitentiary (KSP). In the absence of a documented medical excuse, all inmates in the segregation unit are given a haircut of not longer than two inches pursuant to KSP's Institutional Policy 10–02–01. It does not appear that inmates in the general population are given such haircuts. Phipps objected to the cutting of his earlocks as contrary to his religious beliefs. Although Phipps requested a photograph be taken showing the haircut, for purposes of this motion the court assumes that the haircut he was given removed all or substantially all of his hair.

The defendants have offered numerous justifications for the haircut policy. Defendants argue that short hair 1) facilitates the quick identification of inmates, 2) reduces the ability of inmates to hide contraband and small weapons, 3) promotes cleanliness, 4) promotes sanitation, 5) removes tension between guards and inmates if long hair had to be searched, and 6) prevents disguise in case of escape.

### SUMMARY JUDGMENT STANDARD

Fed.R.Civ.P. 56(c) establishes that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are material to the outcome of a particular litigation. *Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities, and draw all reasonable inferences against the moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

If the moving party meets that burden, the burden then shifts to the non-moving party to present "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. In applying these principles, the Sixth Circuit has stated that the standard for a summary judgment motion is that same as that for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989) (citation omitted).

### FIRST AMENDMENT CLAIM

An inmate, as any other citizen, does not enjoy an unfettered right to practice his or her religious beliefs. However, any restriction placed upon the free exercise of religion is subject to scrutiny. In prisons, such scrutiny has been met only upon a demonstration that legitimate penological interests justify the restriction. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). The validity of short haircuts in prisons has been upheld against a free exercise challenge, and the proffered reasons have been deemed legitimate by the Sixth Circuit. *Pollock v. Marshall,* 845 F.2d 656 (6th Cir.), *cert. denied,* 488 U.S. 897, 109 S.Ct. 239, 102 L.Ed.2d 228 (1988).

■ In *Employment Division v. Smith,* 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), the Supreme Court held that the where a law is neutral and of general applicability, even where the law places an incidental burden on the free exercise of religion, it will be upheld if it is reasonably related to a legitimate government interest. However, in 1993 Congress passed the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq.* (1993), which restored the compelling government interest test as set forth in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). 42 U.S.C. § 2000bb–1 (1993). Under this test, 1) any government action that places a *substantial burden* on the free exercise of religious beliefs must 2) be justified by a *compelling interest* that is within the government's power to regulate, and 3) must be the means to achieve that interest that is *least restrictive* of the free exercise right. *Sherbert* 374 U.S. at 403, 83 S.Ct. at 1793; *Yoder* 406 U.S. at 214, 92 S.Ct. at 1532.

A number of courts have held that the enactment of the RFRA served to overrule *O'Lone.* See *Diaz v. Collins,* 872 F.Supp. 353, 358 (1994) (citing *Brown–El v. Harris,* 26 F.3d 68, 69 (8th Cir.1994); *Messina v. Mazzeo,* 854 F.Supp. 116, 134 (E.D.N.Y. 1994); *Campos v. Coughlin,* 854 F.Supp. 194, 206 (S.D.N.Y.1994)). This clearly was the intention of Congress, and an amendment seeking to exempt prisons from the bill was rejected. See 139 CONG.REC. S14,461–01, S14,468 (daily ed. October 27, 1993); S.Rep. No. 103–111, 103rd Congress, 1st Session (1993), U.S.Code Cong. & Admin.News 1993, 1892. Further, the ability to expand the constitutional guarantees of the Bill of Rights has been held to be within Congress' power under § 5 of the Fourteenth Amendment. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978).

■ Thus the standard under the RFRA controls the disposition of the summary judgment motions. In *Diaz,* the court held that prison regulations requiring short haircuts survived even the stricter scrutiny required under the RFRA. *Diaz* at 358–59. In that case, the inmate was an adherent to Native American beliefs who was required to receive a short haircut. The reasons offered and accepted by the court were the same safety and identification concerns offered by the defendants here.

While it is an open question whether the haircut policy at KSP constitutes a substantial burden of Phipps' free exercise right, the court will assume that it does. Phipps has cited Leviticus 19:27 which states "Do not cut the hair at the sides of your head" as the basis for his claim. The Supreme Court noted in *Employment Division* that excessive deference to individual religious beliefs would allow each person "to become a law unto himself." However, the court is not in a position to judge the centrality of this religious belief to Phipps' free exercise of religion. Furthermore, the court does not question the sincerity of Phipps' belief, and thus chooses to base its decision on other grounds.

The court finds the safety concerns offered by the defendants to be sufficiently compelling to satisfy the RFRA standard. The ability of prison officials to quickly identify inmates and protect prison guards and inmates from hidden contraband are matters of paramount concern sufficient to justify small intrusions on prisoners' free exercise rights. While the sanitation and other justifications offered are unquestionably legitimate, they would not be, by themselves, sufficiently compelling to meet the RFRA standard. However the court notes them as they, in conjunction with the safety and identification concerns, offer additional justification for the KSP haircutting policy.

Further, cutting inmates' hair short appears to be the only plausible way to meet these safety concerns, and thus satisfies the requirement that the least restrictive means available be used to achieve the compelling interests. While other methods might be used, such as constantly searching inmates for contraband, such means would be impractical and just as likely to burden constitutional interests. Some interests, like quick identification, cannot be realistically achieved by any other method. This being the case, defendants' conduct was not a violation of Phipps' First Amendment rights.

An appropriate order shall issue.

## ORDER

Plaintiff and Defendants having filed Cross Motions for Summary Judgment and the Court being sufficiently advised, Plaintiff's motion is DENIED and Defendant's motion is GRANTED.

Plaintiff's claims are DISMISSED with prejudice.

This is a final and appealable order and there is no just cause for delay.